| | | |
|---|---|---|
| CHRISTOPHER BLACKSTONE | : | SUIT NO.: 680555 SECTION: 23 |
| VERSUS | : | |
| CHRISTOPHER D. DANTIN, CHRIS A. DANTIN, CHRIS DANTIN, INC. DANTIN FINANCIAL, LLC, DANTIN FINANCIAL MANAGEMENT, INC CHRIS DANTIN FINANCIAL SERVICES, LLC and DANTIN FINANCIAL ADVISORY, LLC | : : : : : : | 19TH JUDICIAL DISTRICT COURT PARISH OF EAST BATON ROUGE STATE OF LOUISIANA |

## MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

For the following reasons, Christopher Blackstone ("Blackstone"), shows that because there are no genuine issues of material fact bearing upon the liability of defendants Christopher D. Dantin, individually, and Chris Dantin Financial Services, LLC, collectively referred to herein as "Dantin," to Blackstone, as a matter of law, he is entitled to a judgment in his favor ordering Defendants, Christopher D. Dantin and Chris Dantin Financial Services, LLC, to pay him the amount of his investment plus interest ($1,806,025.04 as of September 30, 2019) until paid.

Under LSA-R.S. 51:714(A), no one may sell securities in Louisiana unless they are registered as a dealer or salesman with the Commissioner of the Louisiana Office of Financial Institutions. If they are not, they are liable to any purchaser of securities they sold in Louisiana for the amount invested, plus interest, attorney's fees, and costs.

Because Chris D. Dantin and Chris Dantin Financial, LLC admitted that they 1) were not a registered dealer or salesmen, and 2) sold to Blackstone, in Louisiana, an investment in Merchant Cash Advance Transactions ("MCATs") issued by 1st Global Capital, L.L.C. ("1GC") through a Syndication Partner Agreement, they must pay to Blackstone the $1,500,000 invested, plus the $254,902.75 in interest that accrued through June 30, 2018, plus legal interest accruing thereafter until the date of repayment as set forth in LSA-R.S. 51:714(C)(1)(a) which totals, as of September 30, 2019, $1,806,025.51. Because the facts material to Dantin's liability are admitted, summary judgment is mandated. Blackstone does not currently seek a summary judgment on the issue of reasonable attorney's fees and court costs but reserves that for a later date. Blackstone respectfully requests that his Motion for Partial Summary Judgment be GRANTED without further delay.



Pursuant to Local Rule 9.10(a), Blackstone respectfully submits:

## 1. List of Essential Legal Elements Necessary for Summary Judgment

1) To lawfully sell securities in Louisiana, one must register as a dealer or salesman with the Office of the Louisiana Commissioner of Securities. LSA-R.S. 51:703(A). LSA-R.S. 51:712(A).

2) An investment contract is "security" as defined by LSA-R.S.51:702(15)(a).

3) By violating R.S. 51:712(A), a seller is liable to the buyer of the security, and who may sue in any court to recover the consideration paid in cash with interest thereon from the date of payment down to the date of repayment as computed in R.S. 51:714(C)(1), less the amount of any income received thereon, together with all taxable court costs and reasonable attorney's fees, upon the tender, where practicable, of the security at any time before the entry of judgment. LSA-R.S. 51:714(A).

## 2. List of Uncontested Material Facts

a. Christopher D. Dantin and Chris Dantin Financial Services, LLC admitted that they have not been registered, as a dealer or salesperson, to sell securities pursuant to LSA-R.S. 51:703 since 2011. Exhibits 1 and 2, *Petition and Answer ¶ 8*.

b. Christopher D. Dantin and Chris Dantin Financial Services, LLC have admitted that in early 2016, Chris D. Dantin met with Blackstone at 9241 Bluebonnet Boulevard, Suite C, Baton Rouge, Louisiana, 70810 to discuss a money-making opportunity by investing in interests in Merchant Cash Advance Transactions, called "MCAT" or "MCATs, issued by 1GC. Exhibits 3 and 4, *Response to Request for Admission No. 2*.

c. Christopher D. Dantin and Chris Dantin Financial Services, LLC admitted that they provided to Blackstone sales documents provided by 1GC attached hereto as BLACKSTONE – 000287 to 000325, which documents repeatedly and expressly refer to the opportunity as "investments." Exhibits 3 and 4, *Response to Request for Admission No. 33 and BLACKSTONE – 000287 to 000325 attached thereto*.

d. Christopher D. Dantin and Chris Dantin Financial Services, LLC admitted that they, or someone in their office, asked Blackstone to sign the Syndication Partner Agreement, to memorialize his investment in the MCATs. Exhibits 3 and 4, *Response to Request for Admission No. 32 and attached BLACKSTONE-000027-30*.

2

e. Christopher D. Dantin and Chris Dantin Financial Services, LLC admitted that Blackstone delivered the signed Syndication Partner Agreement to their office in Baton Rouge, Louisiana at Dantin's request. Exhibits 3 and 4, *Response to Request for Admission Nos. 19 and 31;* Exhibit 5, *Affidavit of Christopher Blackstone, ¶10 and attached BLACKSTONE -000031, and 000338 to 000340;* Exhibit 6, *Louisiana Secretary of State Certified Copy, p. 4, of Chris Dantin Financial Services, LLC,'s Annual Report for the period ending 6/16/2019.*

f. The Syndication Partner Agreement:

   1) indicates on page 3: "Initial Funds Deposit Amount: $300,000.00";
   2) recites at page 1 "The Syndication Partner has expressed an interest in investing funds with 1GC in connection with MCAT";
   3) states in paragraph 1: "1GC shall enter into MCAT in certain amounts and with certain clients, which shall be done in 1GC's sole and arbitrary discretion";
   4) states in paragraph 2: "The foregoing MCAT are intended to generate certain regularly collected amounts which shall be designated 'Collections'";
   5) states at paragraph 4: "...1GC shall solely decide the MCAT percentages in which the Syndication Partner shall participate, understanding that the Syndication Partner's percentage may vary from MCAT to MCAT";
   6) states at paragraph 5: "Syndication Partner [Blackstone] understands and agrees that all MCAT funds invested with 1GC shall be retained as working capital for a minimum of twelve (12) months";
   7) states at paragraph 7, "the percentage participation [by the Syndication Partner] ...shall depend on the monetary amount of the Syndication Partner's investments"; and
   8) states at paragraph 13: "Integration. The parties have incorporated in this Agreement their entire understanding and, therefore, agree that no oral statement or prior matter extrinsic to this Agreement concerning the rights, duties or obligations of wither party hereto or to the other shall have any force or effect. Neither party relies upon any representations other than those expressly herein set forth."

*BLACKSTONE-000338 to 000340 attached to* Exhibit 5, *Affidavit of Christopher Blackstone.*

g. Chris D. Dantin and Chris Dantin Financial Services, LLC have admitted that they had an Affiliated Agent Agreement with 1GC authorizing them to solicit, offer and sell the MCATs in Louisiana. Exhibit 4, *Response to Request for Admission No. 5.*

h. Dantin admitted receipt of over $2,000,0000 from 1GC on account of their efforts to solicit, offer or sell the investments in 1GC's MCATs, including at least $64,000 on account of the money paid by Blackstone. Exhibits 3 and 4, *Response to Request for Admission Nos. 14, 15 and attached document produced in Response to Request for*

3

    *Production entitled "1ˢᵗ Global Capital LLC, Chris D. Dantin Financial Services LLC Clients Log," p. 6-7.*[1]

i. As its manager, Chris D. Dantin controlled Chris Dantin Financial Services, LLC. Exhibit 6, *Louisiana Secretary of State Certified Copy, p. 4, of Chris Dantin Financial Services, LLC,'s Annual Report for the period ending 6/16/2019.*

j. Blackstone invested in the MCATs, by delivering to Dantin's office in Louisiana, the following checks made payable to "First Global Capital, LLC,":

1) BLACKSTONE – 000330, in the amount of $300,000.00. Exhibits 3 and 4, *Response to Request for Admission No. 21 and attached BLACKSTONE-000330; Exhibit 5, Affidavit of Christopher Blackstone, ¶ 8;*

2) BLACKSTONE – 000331 in the amount of $500,000.00. Exhibits 3 and 4, *Response to Request for Admission No. 22 and attached BLACKSTONE-000331; Exhibit 5, Affidavit of Christopher Blackstone, ¶ 15;* and

3) BLACKSTONE – 000335 in the amount of $200,000.00. Exhibits 3 and 4, *Response to Request for Admission No. 25 and attached BLACKSTONE-000335; Exhibit 5, Affidavit of Christopher Blackstone, ¶ 19.*

k. Christopher D. Dantin and Chris Dantin Financial Services, LLC admitted that Blackstone executed in Louisiana the following addendum's reflecting his increasing investment in the MCAT:

1) BLACKSTONE – 000332, addendum showing an increase from $300,000 to $8,000,000. Exhibits 3 and 4, *Response to Request for Admission No. 23 and attached BLACKSTONE-000332;* Exhibit 5, *Affidavit of Christopher Blackstone, ¶ 16;* and

2) BLACKSTONE – 000334, addendum showing an increase from $800,000 to $1,000,000. Exhibits 3 and 4, *Response to Request for Admission No. 26 and attached BLACKSTONE-000334; Exhibit 5, Affidavit of Christopher Blackstone, ¶ 20.*

l. Dantin admitted that he, or someone on his behalf, mailed BLACKSTONE – 000331, the check in the amount of $500,000.00 dated January 10, 2017, to Darice Lang at 1GC in Florida as reflected in the attached USPS tracking receipt attached hereto as

---

[1] This document has been redacted by Blackstone's counsel to protect the identities of other people who may not want information regarding their investment in 1GC made public.

BLACKSTONE – 000333. Exhibits 3 and 4, *Response to Request for Admission No. 24 and attached BLACKSTONE-000333.*

m. On or about May 11, 2017, Blackstone increased his investment under the Syndication Partner Agreement by a check, a copy of which is attached hereto as BLACKSTONE - 000337, in the amount of $500,000, made payable to First Global Capital and a signed addendum, a copy of which is attached hereto as BLACKSTONE – 000334, increasing his investment from $1,000,000 to $1,500,000. Exhibits 3 and 4, *Response to Request for Admission No. 28 and attached BLACKSTONE-000337; Exhibit 5, Affidavit of Christopher Blackstone,* ¶¶*21, 22.*

n. As of June 30, 2018, 1GC reported an effective interest rate of 10.7% and Blackstone had earned interest totaling $254,902.75 on his $1,500,000 investment. *Exhibit 5, Affidavit of Christopher Blackstone,* ¶*23, and attached Exhibit A, June 30, 2018 statement.*

o. Blackstone has received no income from or repayment of any of the amounts he paid as an investment in 1GC's MCATs. Exhibit 5, *Affidavit of Christopher Blackstone,* ¶24.

p. Blackstone hereby tenders the promissory note and Syndication Partner Agreement including any addendums thereto to Dantin pursuant to LSA-R.S. 51:714(A). Exhibit 5, *Affidavit of Christopher Blackstone,* ¶ 27.

## LAW AND ARGUMENT

**1. Standard for Summary Judgment**

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." LSA-C.C.P. art. 966(A)(2). The burden of proof is on the mover. The burden on the adverse party is to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1). A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3).

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Janney v. Pearce,* 2009-2103 (La. App. 1 Cir. 5/7/10), 40

5

So. 3d 285, 289, *writ denied*, 2010-1356 (La. 9/24/10), 45 So. 3d 1079. A genuine issue is a triable issue, which means that an issue is genuine if reasonable persons could disagree; if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. A fact is "material" when its existence or nonexistence may be essential to Blackstone's cause of action under the applicable theory of recovery. *Kasem v. State Farm Fire & Cas. Co.*, 2016-0217 (La. App. 1 Cir. 2/10/17), 212 So. 3d 6, 13.

### 2. Blackstone is Entitled to Partial Summary Judgment because one can only conclude that Chris D. Dantin and Chris Dantin Financial, LLC sold him securities in violation of LSA-R.S. 51:712(A).

It is unlawful for any person to "offer to sell or to sell any security in violation of R.S. 51:703...." LSA-51:712(A)(1). LSA-R.S. 51:703(A) makes it unlawful for any person to "offer for sale or sell any securities from within this state" unless they are registered in the office of the commissioner. " 'Sale' or 'sell' means and shall include every contract of sale or disposition of a security or interest in a security for value. The term 'offer to sell', 'offer for sale', or 'offer' shall include every attempt or offer to dispose of or solicitation of an offer to buy a security or interest in a security for value...." LSA-R.S.51:702 (13). A "security" includes "any note; ...evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; [or] investment contract..." As shown below, the admitted facts show that Chris D. Dantin and Chris Dantin Financial, LLC violated R.S. 51:712(A) by selling in Louisiana a security to Blackstone.

### a. Neither Chris D. Dantin nor Chris Dantin Financial, LLC were registered with the Commissioner as required by LSA-R.S. 51:703(2), but both sold Blackstone the investment in the MCATS.

Chris D. Dantin and Chris Dantin Financial, LLC have admitted that they:

*1)* were not registered with the Commissioner as a dealer or a salesman since 2011 to sell securities as defined by LSA-R.S. 51:703(A). *Uncontested Fact "a"*;

*2)* were agents of 1GC for the purpose of selling, including to Blackstone, investments in the MCATs issued by 1GC. *Uncontested Fact "g"*;

*3)* offered to Blackstone in Louisiana the investment in 1GC's MCATs. *Uncontested Facts "b," "c," "d," and "e,"*;

*4)* obtained hefty commissions of more than two million dollars ($2,000,000) from 1GC, including $64,000 as a result of Dantin's efforts in inducing Blackstone pay $1,500,000 to 1GC in exchange for his investment in the MCATs as memorialized in the Syndication Partner Agreement. *Uncontested Fact "h"*;

*5)* provided marketing materials, from 1GC referring to this product as an "investment," to sell it to Blackstone in Louisiana. *Uncontested Fact "c"*;

6

6) offered and sold this investment by providing to and asking Blackstone to sign the Syndication Partner Agreement in Baton Rouge, Louisiana. *Uncontested Fact "d";*

7) receiving Blackstone's investment for 1GC. *Uncontested Fact "j."*

The facts of this case are similar to those in *Godair v. Place Vendome Corp. of Am.*, 93-1818 (La. App. 1 Cir. 12/22/94), 648 So. 2d 440, 445, *writ denied*, 95-0594 (La. 5/12/95), 654 So. 2d 348, where the defendant, Essmeier, who was not a registered salesman with the Office of the Louisiana Commissioner of Securities, approached the plaintiff stating that he represented the security issuer, Place Vendome; gave the plaintiff all of the information, including literature, about the security; obtained and forwarded the investment payments from the Plaintiff to Place Vendome; and gave the plaintiff the documents memorializing the security interest (there a promissory note). *Godair*, 648 So.2d at 446-447. Under these facts, the *Godair* Court upheld summary judgment finding that Essmeier acted as a salesman of the security and, because he was not registered with the Commissioner, was "clearly in violation of LSA-R.S. 51:703." Furthermore, the *Godair* Court recognized that

> [a]ny person who violates LSA-R.S. 51:703 commits an "unlawful practice" under the Louisiana Securities Law. LSA-R.S. 51:712A(1). Anyone who commits an "unlawful practice in the sale of a security is liable to the buyer of the security for the amount of the consideration paid, interest, costs, and attorney's fees. LSA-R.S. 51:714 A. Accordingly, Essmeier is liable to plaintiff for the value of the security ($100,000), interest, costs and attorney's fees."
> *Godair*, 648 So.2d at 447.

Like the defendants in *Godair*, Defendants here admitted that they solicited Blackstone, in Baton Rouge, to buy this investment in the MCATs; provided Blackstone with sales documentation from the issuer, 1GC; received from Blackstone and forwarded some of checks to 1GC in Florida; and asked him to sign, in Baton Rouge, the Syndication Partner Agreement and addendums documenting the investments. Because Chris D. Dantin and Chris Dantin Financial, LLC admitted the material facts necessary to establish that they sold this investment to Blackstone in Louisiana, as a matter of law, Chris D. Dantin and Chris Dantin Financial, LLC are liable pursuant to LSA-R.S. 51:714 to Blackstone for the $1,500,000 investment, plus interest, that he made in the MCATs if the Syndicated Partner Agreement meets the definition of a "security."

### b. The Syndication Partner Agreement is a Security.

An investment contract is a "security" as the terms is used in LSA-R.S. 51:703 and 714. The Louisiana Securities Law, (formerly known as Louisiana Blue Sky Law)[LSA-R.S. 51:701, *et seq.*] is analogous to the federal Securities Act of 1933. See *Taylor, III, M.D. v. First Jersey*

7

*Securities, Inc.*, 533 So.2d 1383 (La.App. 4th Cir.1988). Courts look to the federal law and jurisprudence interpreting federal securities law to guide the interpretation of the Louisiana provisions. *Taylor,* 533 So.2d at 1385, citing *Gour v. Daray Motor Co., Inc.*, 373 So.2d 571, 578 (La.App. 3rd Cir.1979), *writ granted* 376 So.2d 1270 (La.1979), *writs dismissed,* 377 So.2d 1033 (La.1979); *State v. Powdrill,* 95-2307 (La. 11/25/96), 684 So. 2d 350, 353; *Godair,* 648 So. 2d at 444.

Whether the Syndication Partner Agreement is an "investment contract" is a legal issue. *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 297 (1946)("The legal issue in this case turns upon a determination of whether, under the circumstances, the land sales contract, the warranty deed and the service contract together constitute an 'investment contract'...."). "Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law." *Amitech U.S.A., Ltd. v. Nottingham Const. Co.*, 2009-2048 (La. App. 1 Cir. 10/29/10), 57 So.3d 1043, 1057, *writ denied,* 2011-0866 (La. 6/17/11), 63 So.3d 1036, *and writ denied,* 2011-0953 (La. 6/17/11), 63 So.3d 1043. Evaluating only the four corners of the Syndication Partner Agreement reflects that it meets the definition of an investment contract since it is "(1) an investment; (2) in a common enterprise; (3) with a reasonable expectation of profits; (4) to be derived from the entrepreneurial or managerial efforts of others." *Reves v. Ernst & Young,* 494 U.S. 56, 64 (1990); *SEC v. W.J. Howey Co.*, 328 U.S. at 299.

The Syndication Partner Agreement uses the word "invest" or "investment" multiple times to describe the payments. The recital says that Blackstone "expressed an interest in investing funds with 1GC in connection with the MCAT." *Uncontested Fact "f" 2.* Section 5 states that the MCAT funds were "invested with 1GC." *Uncontested Fact "f" 6.* Section 7 says that the percentage participation in an MCAT depends on the amount of "the Syndicated Partner's investment." *Uncontested Fact "f"7.* By its own terms, the Syndication Partner Agreement is an investment. Thus, it is uncontested that the first factor identified in the four-part *Reves* test is satisfied.

The second element, "common enterprise," is satisfied when there is horizontal commonality—the pooling of assets from multiple investors in such a manner that all share in the profits and risks of the enterprise—. *S.E.C. v. SG Ltd.*, 265 F.3d 42, 50 (1st Cir. 2001). That an investor's return, however, is independent of that of other investors in the scheme is not decisive. *S.E.C. v. Koscot Interplane*tary, Inc., 497 F.2d 473, 479 (5th Cir. 1974). Section 4 of the Syndication Partner Agreement makes it plain that the MCATs are not being created just for

Blackstone's benefit. "Syndication Partner [Blackstone] understands and agrees that all MCAT funds invested with 1GC shall be retained as working capital for a minimum of twelve (12) months." *Uncontested Fact "f"6.* And Blackstone is only one of multiple investors in any MCAT as shown by the recognition that Blackstone will have only a percentage participation in each MCAT. *Uncontested Fact "f"7.* Since Section 7 characterized Blackstone's investment as a percentage of each MCAT, horizontal commonality is established since plainly multiple investor assets were clearly pooled for an MCAT and all shared in the profits and risks. Finally, that Dantin made over $2,000,000 in commissions from selling these investments to people other than Blackstone reflects that this was a common enterprise where the fortunes of Blackstone and other investors were tied to 1GC's efforts. *Uncontested Fact "h."*

The third *Reves* factor is satisfied by Section 2 and 4 of the Syndication Partner Agreement reflecting that Blackstone would participate in the amounts generated by the MCAT's, which is another of way of saying that he had "a reasonable expectation of profits." *Uncontested Fact "f"5.* Finally, the fourth *Reves* factor is unquestionably satisfied because Blackstone was to receive this profit, not based on any work that he did, but based only on 1GC's efforts to procure and manage the MCATs. *Uncontested Fact "f"3.* Accordingly, the terms of the Syndication Partner Agreement reflect, on its face, that the $1,500,000 investment made by Blackstone under the Syndication Partner Agreement was an investment contract, and thus a security, that Dantin was not authorized to offer or sell.

### c. As of September 30, 3019, Dantin is liable to Blackstone for $1,860,025.51, plus legal interest on $1,500,000 thereafter until paid.

> Any person who violates R.S. 51:712(A) shall be liable to the person buying such security, and such buyer may sue in any court to recover the consideration paid in cash or, if such consideration was not paid in cash, the fair value thereof at the time such consideration was paid for the security with interest thereon from the date of payment down to the date of repayment as computed in R.S. 51:714(C)(1), less the amount of any income received thereon, together with all taxable court costs and reasonable attorney's fees, upon the tender, where practicable, of the security at any time before the entry of judgment, or for damages if he no longer owns the security. Damages are the amount which equals the difference between the fair value of the consideration the buyer gave for the security and the fair value of the security at the time the buyer disposed of it, plus interest thereon from the date of payment to the date of repayment as computed in R.S. 51:714(C)(2).

LSA-R.S. 51:714(A)

LSA-R.S. 51:714(A) and (C)(1) set the amounts that Dantin is liable to Blackstone on account of Dantin selling him the investment in the MCATs without registering as a dealer or salesman with the Commissioner. Under R.S. 51:714 (C)(1), Dantin is liable for the cash that

Blackstone paid ($1,500,000), any interest earned through June 30, 2018 ($254,902.75), along with legal interest from June 30, 2018 until it is paid. Legal interest is merely a math calculation.

Blackstone requests that this Honorable Court take judicial notice that legal interest was 5% in 2018, and 6% in 2019. Legal interest from June 30, 2018 until December 31, 2018 (184 days) is determined by the following calculation: $[(1,500,000 \times 5\%) / 365] \times 184^2 = \$37,808.22$. Similarly, legal interest from January 1, 209 through September 30, 2019 (273 days) is determined by the following calculation $[(1,500,000 \times 6\%) / 365] \times 273^3 = \$67,314.07$. Dantin, therefore, is liable to Blackstone for $1,500,000, plus $254,902.75 (interest earned through June 30, 2018), plus $37,808.22 (2018 legal interest), plus $67,314.07 (2019 legal interest through September 30, 2019), plus legal interest thereafter until paid in full, and costs pursuant to LSA-R.S. 51:714 (A).

## CONCLUSION

Blackstone respectfully requests that partial summary judgment be rendered in his favor because the following material facts are uncontested: (1) that Chris D. Dantin, who is the manager of Chris Dantin Financial Services, LLC solicited Blackstone to invest $1,500,000 in MCATs issued by 1GC which was memorialized by the Syndication Partner Agreement and related addendums that Dantin asked Blackstone to sign; (2) the Syndication Partner Agreement is a security; and (3) that neither Chris D. Dantin nor Chris Dantin Financial Services, LLC were registered with the Commissioner as required by R.S. 51:703(A). For all of the foregoing reasons, Blackstone respectfully prays that this Honorable Court GRANT his Motion for Partial Summary Judgment in the amount of $1,860,025.04, plus legal interest on $1,500,000 from October 1, 2019 thereafter until paid in full, for all taxable court costs, and for all other equitable relief deemed appropriate by this Honorable Court.

Respectfully submitted:

J. E. Cullens, Jr., T.A., La. Bar #23011
Andrée Matherne Cullens, La. Bar #23212
**WALTERS, PAPILLION,
THOMAS, CULLENS, LLC**
12345 Perkins Road, Bldg One
Baton Rouge, LA 70810
Phone: (225) 236-3636
Facsimile: (225) 236-3650
Email: acullens@lawbr.net

---

[2] $1,500,000 x .05= $75,000/365= $205.47942 x 184= $37,808.22
[3] $1,500,000 x .06= $90,000/365= $246.57534 x 273= $67,314.07

10